**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-20294-BLOOM**

JESSIE JACKSON,

    Plaintiff,
v.

F. PAPILLION, *et al.*,

    Defendants.
_____/

**ORDER ON MOTION FOR FINAL SUMMARY JUDGMENT**

    **THIS CAUSE** is before the Court upon Defendants Dr. Papillion's and Dr. Delgado's (collectively, "Defendants") Motion for Final Summary Judgment and Incorporated Memorandum of Law, ECF No. [66] ("Motion").[1] The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

    **I.**    **BACKGROUND**

    On January 22, 2020, Plaintiff, an inmate confined at the Suwannee Correctional Institution ("Suwannee C.I."), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] Plaintiff has separately requested that the Court withhold a ruling on Defendants' Motion based on Defendants' objections to Plaintiff's December 23, 2020 and January 15, 2021 discovery requests. *See generally* ECF No. [69]. On April 28, 2020, the Court ordered that all discovery must be completed by January 12, 2021. ECF No. [26] ("Scheduling Order"). As Defendants correctly note, Plaintiff's discovery requests were untimely because Defendants' responses were due after the discovery cut-off date. ECF No. [70] at 2; *see also* S.D. Fla. L.R. 26.1(d) ("written discovery requests . . . must be served in sufficient time that the response is due on or before the discovery cutoff date. . . . Failure by the party seeking discovery to comply with this paragraph obviates the need to respond or object to the discovery"). The fact that Plaintiff is proceeding *pro se* does not excuse his failure to comply with applicable procedural rules. *Castro v. Dir., F.D.I.C.*, 449 F. App'x 786, 788 (11th Cir. 2011) ("Once a pro se IFP litigant is in court, he is subject to the Federal Rules of Civil Procedure and the local rules of the court." (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989))). Plaintiff offers no explanation as to why he waited eight months to serve his discovery requests, and the Court will not reward Plaintiff for his lack of diligence by withholding a ruling on the instant Motion.

medical professionals at Dade Correctional Institution ("Dade C.I.") violated his Eighth Amendment Rights. ECF No. [1] ("Complaint"). On February 14, 2020, Magistrate Judge Lisette M. Reid entered a Report and Recommendation, which recommended that Plaintiff's allegations against Dr. Papillion and Dr. Delgado were sufficient to avoid dismissal pursuant to 28 U.S.C. § 1915. ECF No. [6]. On March 2, 2020, this Court adopted Judge Reid's Report and Recommendation. ECF No. [9]. The Defendants were served, thereafter answered the Complaint, and the parties engaged in discovery.

On February 3, 2021, Defendants filed the instant Motion, ECF No. [66], along with their corresponding Statement of Undisputed Facts, ECF No. [67] ("SOF"). Plaintiff Jessie Jackson ("Plaintiff") filed a response in opposition to the Motion, ECF No. [73] ("Response"), to which Defendants filed a reply, ECF No. [75] ("Reply"). Plaintiff has not filed an opposing statement of material facts,[2] but has filed an affidavit in support of his Response, ECF No. [72].

## II.     MATERIAL FACTS

Based on the parties' briefing, together with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

In December 2017, Plaintiff, who is diabetic, sought medical attention for blisters on his left big toe. ECF No. [72] ¶ 1. On December 14, 2017, x-rays were taken of Plaintiff's left foot,

---

[2] Pursuant to the Court's Scheduling Order, the parties were cautioned that if "a responding party fails to controvert a movant's supported material facts in an opposing statement of material facts, the movant's material facts will be deemed admitted." ECF No. [26] at 2-3; *see also* S.D. Fla. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply."). The Court had separately reviewed the evidence cited in Defendants' SOF, and finds that the cited materials—i.e., Plaintiff's medical records, ECF Nos. [67-1] at 7-28 and [67-2] at 5-13—support the assertions made, and are therefore deemed admitted. *See* S.D. Fla. L.R. 56.1(c). Notwithstanding their admission, the Court will construe the facts in the light most favorable to Plaintiff as required on a motion for summary judgment.

showing no fracture, dislocation, or evidence of osteomyelitis. ECF No. [67-1] at 7. According to Dr. Papillion, on December 20, 2017, he referred Plaintiff to a podiatrist and recommended that Plaintiff receive daily wound care. ECF No. [67-2] ¶ 6. On December 24, 2017, Dr. Papillion admitted Plaintiff to the infirmary for a 23-hour observation due to a chronic ulceration and fungal infection of his left big toe. *Id.* ¶ 7; *see also id.* at 6; ECF No. [73] at 4. Dr. Papillion's treatment plan consisted of daily wound care and a 10-day antibiotic regiment. ECF No. [67-2] at 6-7.

On January 12, 2018, Plaintiff was seen by Dr. Delgado, who observed that Plaintiff's left big toe was infected. ECF No. [67-1] at 8. Dr. Delgado ordered debridement of the infected tissues and x-rays of Plaintiff's left foot. *Id.* Dr. Delgado also admitted Plaintiff to the infirmary for 90 days to receive antibiotic treatments and daily cleanings. *Id.*; *see also* ECF No. [73] at 4. The x-rays of Plaintiff's left foot were taken on January 18, 2018, which showed osteomyelitis of his left big toe. ECF No. [67-1] at 8-9.

On January 26, 2018, Plaintiff was seen by a podiatrist at Larkin Community Hospital upon Dr. Papillion's referral. ECF No. [67-2] ¶ 8; *see also id.* at 8-9. The podiatrist evaluated Plaintiff, and ordered that Plaintiff receive daily wound care and diabetic shoes. ECF No. [67-2] at 9. On January 31, 2018, Plaintiff was seen by Dr. Delgado, who "encouraged [Plaintiff] to be compliant" with his instructions and ordered continued cleanings of Plaintiff's left big toe with iodine, bacitracin, and tolnaftate. ECF No. [67-1] at 12. Dr. Delgado also advised Plaintiff to "try to keep [his] wound open." *Id.*

On February 19, 2018, Plaintiff was seen by Dr. Delgado and requested diabetic shoes. *Id.* at 13. Dr. Delgado advised Plaintiff that closed-toe shoes were "not a good measure" because they "could trigger maceration of the wound and surrounding skin." *Id.* On February 23, 2018, Plaintiff filed an informal grievance, "complaining about the required diabetic shoes." ECF No. [73] at 3.

On February 26, 2018, Plaintiff renewed his request for diabetic shoes so that he could walk around the compound. ECF No. [67-1] at 14. Dr. Delgado again advised Plaintiff that he was "not in the condition to walk [with] shoes" because they would cause maceration of the wound. *Id.*

On March 5, 2018, Plaintiff was seen by Dr. Delgado, who noted that Plaintiff exhibited "poor cooperation [with] treatment." *Id.* at 15. Specifically, Plaintiff was seen touching the wound on his left big toe with his hands. *Id.* Dr. Delgado ordered continued cleanings of the wound. *Id.*

On March 16, 2018, Plaintiff was seen by the podiatrist at Larkin Community Hospital, complaining of an ulceration to his left big toe. ECF No. [67-1] at 16. The podiatrist did not see any signs of active infection and recommended a treatment plan of wound care, diabetic shoes, and "strict off-loading to the left foot." *Id.*

On March 19, 2018, Plaintiff was seen by Dr. Delgado, who noted that Plaintiff should avoid loading and applying pressure on his left foot and that he should continue with daily cleanings. *Id.* at 17. Thereafter, on April 2, 2018, Plaintiff was seen by Dr. Delgado, complaining that the "small wound on the back of his left big toe [is] not healing." *Id.* at 18. Dr. Delgado instructed Plaintiff to keep his foot elevated and avoid putting pressure on his toe. *Id.* Dr. Delgado noted that Plaintiff was "unfortunately not cooperating with his own treatment" and was "focused only on [the] shoes" recommended by the podiatrist. *Id.* Dr. Delgado also noted that Plaintiff was "argumentative[.]" *Id.*

On April 9, 2018, Dr. Delgado observed that the wound on Plaintiff's left big toe was "healing slowly." *Id.* at 19. Dr. Delgado also noted that Plaintiff was non-compliant with his instructions to avoid putting pressure on his left great toe. *Id.* On April 17, 2018, Plaintiff was discharged from the infirmary upon Dr. Delgado observing that the wound on Plaintiff's left big toe was "almost healed." *Id.* at 20. Plaintiff explains that he was discharged with an "open wound"

and received a wound care pass for further treatments. ECF No. [72] ¶ 7. According to Dr. Delgado, at that time, he believed that Plaintiff's left big toe was healed enough where Plaintiff could walk on it when necessary, and informed Plaintiff of the same. ECF No. [67-1] ¶ 15.

On April 23, 2018, Plaintiff reported to the emergency room for wound care. ECF No. [67-1] at 20. Dr. Delgado noted that Plaintiff's left big toe was "healing very slowly[,]" advised Plaintiff to avoid placing stress and burden on his left big toe, and recommended that Plaintiff continue with daily cleanings. *Id.* Dr. Delgado also noted that Plaintiff arrived at the emergency room pushing a wheelchair of a patient, despite knowing that he could not place stress or burden on his left big toe. *Id.* According to Plaintiff, he was not pushing the wheelchair of another patient, but rather "he was in so much pain" that "he leaned forward on another patient's wheelchair and grabbed on to the handles in order to decrease body weight and pressure off of the toe that was inflamed, infected, and leaking." ECF No. [73] at 9.

On May 11, 2018, Plaintiff was seen by Dr. Delgado, who observed that Plaintiff's left big toe was "oozing[.]" ECF No. [67-1] at 21. Dr. Delgado ordered medication to treat Plaintiff's left big toe and instructed Plaintiff to keep proper hygiene. *Id.* On June 8, 2018, Dr. Delgado noted that Plaintiff's wound was "almost healed" and that it was a "good idea to start ordering the boots" to "prevent recurrent future infections." *Id.* at 22.

On July 2, 2018, Plaintiff was treated in the emergency room due to an infection on his left big toe. *Id.* at 23. Dr. Delgado prescribed Plaintiff with Levaquin and Meloxicam. *Id.* at 23; ECF No. [67-1] ¶ 19. On July 5, 2018, Plaintiff was seen by Dr. Papillion, who ordered daily treatments of saline and ointment for Plaintiff's left big toe. ECF No. [67-2] at 11. On July 13, 2018, Plaintiff was treated in the emergency room by Dr. Papillion. *Id.* at 12. Plaintiff complained that the drainage in his left big toe was getting worse, and Dr. Papillion admitted Plaintiff to the infirmary

for a 23-hour observation. *Id.* At that time, Plaintiff was finishing his treatment of Levaquin. *Id.* Plaintiff explains that he was "resistant to the antibiotics [Defendants prescribed] in the most crucial state of the infection." ECF No. [72] ¶ 11.

Plaintiff's left big toe was amputated in July 2018, which Defendants maintain was due to Plaintiff's non-compliance with the medical instructions provided to him. ECF Nos. [67-1] ¶ 20 and [67-2] ¶ 12. Plaintiff, however, maintains that he was compliant with Defendants' instructions, as he took the prescribed "insulin twice a day" and "never refused any medical treatments by signing a refusal form." ECF No. [72] ¶ 13. According to Plaintiff, his left big toe was amputated due to Defendants' failure to provide him with diabetic shoes, a wheelchair upon his departure from the infirmary, and proper antibiotics. *Id.* ¶¶ 4-12; *see also* ECF No. [73] at 3-4, 10. Plaintiff also contends that during his wound care, Plaintiff tried getting the attention of Defendants so he could explain his concerns about his infected left big toe, but "they brushed [him] away, telling [him] to file a sick call slip." ECF No. [72] ¶ 10.

Following the amputation of his left big toe, Plaintiff was transported to Larkin Community Hospital for a follow-up visit. ECF No. [73] at 6. The van was not equipped with a sidestep and, upon existing the van, "[Plaintiff] lost his footing and injured his left foot." *Id.* According to Plaintiff, he sought medical attention the next day, but Defendants showed no concern and discharged Plaintiff from the infirmary. *Id.* Plaintiff also explains that, one week later, the toes on his left foot turned black. *Id.*

Plaintiff's medical records reveal that he was seen by Dr. Delgado on September 27, 2018, complaining of pain in the toes of his left foot. ECF No. [67-1] at 24. Dr. Delgado ordered x-rays that day, which were performed on October 1, 2018. *Id.* On October 12, 2018, Dr. Delgado reviewed the x-rays with Plaintiff, and explained that the x-rays showed non-displaced fractures

of his second and third left toes. *Id.* at 25. Based on his review of the x-rays and injury, Dr. Delgado opined that the fractures would heal on their own and required no treatment. ECF No. [67-1] ¶ 23. Dr. Papillion also reviewed the x-rays and agreed with Dr. Delgado's conclusion. ECF No. [67-2] ¶ 13; *see also id.* at 13.

On October 22, 2018, Plaintiff was seen by Dr. Delgado, and continued to complain of pain in his left toes. ECF No. [67-1] at 26. Dr. Delgado provided Plaintiff with a cane to prevent stress on his toes and referred Plaintiff to a podiatrist. *Id.* On December 6, 2018, Dr. Delgado treated Plaintiff, who did not make any complaints about his left toes. *Id.* On December 27, 2018, Plaintiff complained that his left foot was swelling and requested that Dr. Delgado provide him with a walker. *Id.* at 28. Dr. Delgado agreed and provided Plaintiff with a walker. *Id.* According to Plaintiff, he received no treatment for his fractured toes, his toes healed in a disfigured form due to Defendants' failure to provide him with a medical short boot, and he continues to suffer pain. ECF No. [73] at 7; *see also* ECF No. [72] ¶ 14.

Defendants now move for summary judgment and contend that Plaintiff fails to establish a constitutional violation of deliberate indifference to a serious medical need. Defendants challenge each element: Plaintiff fails to establish an objective serious medical need; Plaintiff cannot establish Defendants acted with subjective deliberate indifference; and Plaintiff cannot establish a causal connection between Defendants' actions and Plaintiff's claimed injuries.

### III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ.

7

P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, *LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th

Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion and the parties' arguments.

## IV. DISCUSSION

The Eighth Amendment's prohibition of cruel and unusual punishment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Rather, an Eighth Amendment violation arises only when the medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks omitted) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris*, 941 F.2d at 1505 (citing *Estelle*, 429 U.S. at 106); *see also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d

1263, 1271 (11th Cir. 2020) ("With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good.") (citation omitted) (internal quotation marks omitted).

To prevail on an Eighth Amendment claim for deliberate indifference, a plaintiff must demonstrate: (1) an objective component by showing that he had a serious medical need; (2) a subjective component by showing that defendants acted with deliberate indifference to that serious medical need; and (3) causation between defendant's wrongful indifference and plaintiff's claimed injuries. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

### A. Serious medical need

To establish the first element of a deliberate indifference claim, Plaintiff must demonstrate that he suffered an objectively serious medical need. "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (1994)). "In either of these situations, the medical need must be 'one that if left unattended, poses a substantial risk of serious harm.'" *Id.* (alterations adopted) (quoting *Taylor*, 221 F.3d at 1258).

Defendants do not dispute that the wound on Plaintiff's left big toe qualifies as a serious medical need but challenge the sufficiency of Plaintiff's claim with regard to his fractured toes.[3]

---

[3] Because Plaintiff asserts only one count for deliberate indifference under the Eighth Amendment, the Court address both incidents together—i.e., Defendants' treatment of the wound on Plaintiff's left big toe and Defendants' treatment of Plaintiff's fractured second and third toes.

11

Specifically, Defendants maintain that "[b]roken toes that heal on their own without medical intervention simply cannot constitute an objectively serious medical need." ECF No. [66] at 7.

Upon review of the evidence, while it is questionable that Plaintiff has demonstrated a serious medical need with respect to his fractured toes, the wound on Plaintiff's left big toe qualifies as a serious medical need. While Plaintiff maintains that he sought medical attention for his left foot because his "toes had become discolored[,]" "turned black" a week after sustaining an injury, and suffered from pain, ECF No. [73] at 6, Dr. Delgado ordered x-rays of Plaintiff's left foot, and observed non-displaced fractures in Plaintiff's second and third toes, which he believed would heal on their own and required no further treatment. ECF No. [67-1] ¶ 23; *see also id.* at 25. Dr. Papillion also reviewed the x-rays of Plaintiff's left foot and agreed with Dr. Delgado's diagnosis and course of treatment. ECF No. [67-2] ¶ 13; *see also id.* at 13. Viewing the facts in the light most favorable to Plaintiff, the Court will assume that Plaintiff's fractured toes also equate to a serious medical need. However, as explained below, summary judgment is nonetheless appropriate because Plaintiff has failed to satisfy the two remaining prongs of the deliberate indifference analysis.

### B. Deliberate Indifference

The second element of a deliberate indifference claim requires Plaintiff to demonstrate that Defendants acted with "an attitude of 'deliberate indifference'" to his serious medical needs. *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245-46 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). For example, "[a] complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference." *Bingham*

*v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citation omitted); *see also Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985))).

A review of Plaintiff's medical records reveals that Defendants provided Plaintiff with ongoing and extensive medical treatment for his injuries on his left foot. Specifically, with respect to the wound on Plaintiff's left big toe, Defendants' treatment included: (1) a three-month stay in the infirmary; (2) a host of antibiotic and prescription medications; (3) daily wound care; (4) x-rays of his left foot; (5) follow-up visits with Defendants and other medical professionals at Dade C.I.; (6) a wound care pass following his release from the infirmary; and (7) referrals to see a podiatrist at Larkin Community Hospital. ECF Nos. [67-1] at 7-23 and [67-2] at 1-12; *see also* ECF Nos. [67-1] ¶¶ 4-19 and [67-2] ¶¶ 5-11. Additionally, with respect to his fractured toes, Defendants' treatment included: (1) x-rays of Plaintiff's left foot; (2) a diagnosis that the fractures of Plaintiff's second and third toes would heal on their own and required no further treatment; (3) a referral to see a podiatrist; and (4) a prescription for a cane and a walker. ECF Nos. [67-1] at 24-28 and [67-2] at 13; *see also* ECF Nos. [67-1] ¶¶ 21-26 and [67-2] ¶ 13. Plaintiff does not dispute that he received these treatments. ECF No. [73] at 4-5, 8-11, 14-15.

Defendants argue that Plaintiff has failed to demonstrate that Defendants acted with subjective deliberate indifference in treating his medical needs because Plaintiff's claim amounts to nothing more than a preference for different treatment. ECF No. [66] at 9-13. Based on the record evidence, including a review of Plaintiff's undisputed medical records and submissions, the Court agrees. Indeed, this case does not present a situation where Defendants ignored Plaintiff's serious medical conditions. Rather, the gravamen of Plaintiff's claim is that Defendants should

have provided him with a different course of treatment—namely, diabetic shoes upon his February 23, 2018 request, a wheelchair upon his departure from the infirmary on April 17, 2018, "proper" antibiotics to heal the infection on his left big toe, and a medical short boot to treat his fractured toes. ECF No. [73] at 3-4, 10; *see also* ECF No. [72] ¶¶ 4-12, 14.

It is well-settled, however, that the mere "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment fails to support a claim for cruel and unusual punishment." *Hoffer*, 973 F.3d 1271. "[A]s *Estelle* teaches, the question of whether [Defendants] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107); *see also Harris*, 941 F.2d at 1507 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976))).

With respect to Plaintiff's claim that Defendants were deliberately indifferent to his medical needs by failing to provide him with diabetic shoes, ECF No. [73] at 3, Dr. Delgado advised Plaintiff on several occasions that diabetic shoes were not recommended because they would cause maceration of Plaintiff's wound and surrounding skin. ECF No. [67] at 13-14. While Plaintiff's medical records do reveal that the podiatrist at Larkin Community Hospital prescribed Plaintiff with diabetic shoes on January 16, 2018 and March 16, 2018, Defendants' disagreement with the podiatrist's recommendation does not, alone, amount to a constitutional violation. Indeed, "[t]he Eighth Amendment [does] not compel [Defendants] to check [their] own medical training

Case 1:20-cv-20294-BB Document 77 Entered on FLSD Docket 04/21/2021 Page 15 of 20

Case No. 1:20-cv-20294-BLOOM

and judgment at the door, simply because [they were] informed that some other doctor at some other time had prescribed orthopedic shoes for [Plaintiff]." *Bismark v. Fisher*, 213 F. App'x 892, 896-97 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop*, 871 F.2d at 1033)).

Plaintiff has failed to present any evidence showing that Defendants were aware of a risk of serious harm if the diabetic shoes were not ordered, that diabetic shoes were the only treatment sufficient to meet Plaintiff's medical needs, or that other treatments administered by Defendants were grossly inadequate.[4] Rather, Plaintiff's medical records reveal that Defendants closely monitored Plaintiff's left big toe, prescribed Plaintiff with daily cleanings and antibiotics, released Plaintiff from his three-month stay in the infirmary when his left big toe was "almost healed[,]" and provided Plaintiff with a wound care pass for further treatments upon his departure from the infirmary. ECF Nos. [67-1] at 7-23 and [67-2] at 5-12.

Plaintiff also argues that Defendants were deliberately indifferent to his medical needs by failing to provide him with a wheelchair upon his release from the infirmary in April 2018. ECF No. 73 at 6; *see also* ECF No. [72] ¶ 8. However, Dr. Delgado believed that "Plaintiff's left toe was healed enough that he could walk on it when necessary." ECF No. [67-1] ¶ 15. As Defendants correctly note, "[w]hether Defendants should have recommended [that] Plaintiff [] only walk when necessary or should have prohibited Plaintiff from walking altogether as Plaintiff (an untrained,

---

[4] As explained below, while Dr. Delgado ultimately ordered the diabetic shoes on June 6, 2018, Plaintiff offers no evidence to support his position that the amputation of his left toe "could have been prevented had [Defendants] ordered the diabetic shoes." ECF No. [73] at 10, 12; *see also* ECF No. [72] ¶ 8. At most, Plaintiff's medical records might support an inference that Defendants were negligent in assessing Plaintiff's medical need for diabetic shoes, which falls short of a constitutional violation. *Estelle*, 429 U.S. at 106.

lay witness) suggested is a question of medical judgment" which does not amount to an Eighth Amendment violation. ECF No. [75] at 5-6 (citing *Adams*, 61 F.3d at 1545). To the extent Plaintiff takes issue with Defendants' course of treatment based on the podiatrist's March 16, 2018 recommendation that Plaintiff "needs strict off-loading of the left foot[,]" ECF No. [67-1] at 10, the record reflects that Plaintiff's left big toe was "almost healed" by the time he was discharged on April 17, 2018. ECF No. [67-1] at 20. Absent evidence to the contrary, the Court cannot second-guess Defendants' medical judgment regarding whether a wheelchair or other walking aid was necessary.

Similarly, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his medical needs by failing to administer "proper antibiotics" upon his release from the infirmary. Specifically, Plaintiff maintains that despite receiving several types of antibiotics from Defendants, it was not "until [Defendants] sent [Plaintiff] to Larkin Hospital where he was finally treated and provided with the correct antibiotics." ECF No. [73] at 10-11; *see also* ECF No. [72] ¶¶ 11-12. However, Plaintiff submits no evidence to support his claim that Defendants "failed to provide the correct antibiotic[,]" and the Court cannot accept Plaintiff's wholly unsubstantiated attack on the antibiotics Defendants prescribed. *See Thomas v. City of Jacksonville*, 731 F. App'x 877, 882 (11th Cir. 2018) (finding plaintiffs' claim could not survive where "plaintiffs failed to provide any expert witnesses to support a finding of deliberate indifference rather than mere negligence, thus failing to meet the requirements of their claim." (citing *Rogers*, 792 F.2d at 1058)).

Lastly, Plaintiff fails to demonstrate that Defendants were deliberately indifferent in treating Plaintiff with respect to his fractured toes by failing to provide him with a "special medical short boot." ECF No. [73] at 14. Defendants opined that Plaintiff's fractured toes required no

treatment. ECF Nos. [67-1] ¶ 23 and [67-2] ¶ 13. As Defendants correctly note, "[t]his was not a medical decision made on a whim; rather, Plaintiff underwent x-rays of his toe fractures" and, based on the x-rays, "Defendant doctors believed that the fractures would heal on their own." ECF No. [66] at 6; *see also* ECF Nos. [67-1] at 25 and [67-2] at 13. Additionally, when Plaintiff continued to complain of the pain in his left foot, Dr. Delgado referred Plaintiff to a podiatrist, and provided Plaintiff with a cane and a walker. ECF No. [67-1] at 26, 28. Even if Defendants failed to respond correctly, Plaintiff has not shown that the medical care provided to him was grossly incompetent, reckless, or something greater than mere negligence. *See Rogers*, 792 F.2d at 1058; *Estelle*, 429 U.S. at 106.

Based upon the evidence in the record, no genuine issue of material fact exists, and Plaintiff has failed to meet his burden of demonstrating that Defendants were deliberately indifferent to his medical needs. The Court is certainly sympathetic to Plaintiff's medical conditions and acknowledges that the condition of his left big toe was complicated. However, at most, Plaintiff has shown a difference in opinion between a prisoner-patient and prison medical authorities regarding treatment, which does not amount to an Eighth Amendment violation. *Hoffer*, 973 F.3d at 1273. Indeed, while Plaintiff may have preferred different treatment or medications, his medical records reveal that Defendants closely monitored his condition and provided Plaintiff with ongoing treatment in the months leading up to the amputation of his left big toe. ECF Nos. [67-1] at 7-23 and [67-2] at 5-12. Additionally, following the amputation, Defendants continued to provide Plaintiff with medical treatment to address the pain Plaintiff endured in his left foot as a result of the fractures in his second and third toes. ECF Nos. [67-1] at 24-28 and [67-2] at 13.

The only evidence in support of Plaintiff's position that Defendants' course of treatment was improper is Plaintiff's own affidavit. ECF No. [72] ¶¶ 5-8, 11-12. However, Plaintiff, a lay

17

witness with no medical training, is not qualified to offer an opinion on whether Defendants failed to meet appropriate professional standards, and the Court cannot second-guess the medical treatment provided without evidence that it was inappropriate. *See Thomas*, 731 F. App'x at 882; *Hamm*, 774 F.2d at 1575. Additionally, the mere fact that medical professionals would have treated Plaintiff differently does not, without more, constitute deliberate indifference. *See Bismark*, 213 F. App'x at 896-97; *Adams*, 61 F.3d 1545. Consequently, the record does not create a genuine dispute that Dr. Delgado's or Dr. Papillion's treatment of Plaintiff's serious medical needs, even if negligent, was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058.

### C. Causal Connection

The third element of a deliberate indifference claim requires Plaintiff to demonstrate a causal link between Defendants' wrongful conduct and the claimed injuries. *Mann*, 588 F.3d at 1306-07. Because the record does not demonstrate that Defendants were deliberately indifferent to Plaintiff's serious medical needs, the Court does not need to address whether Plaintiff has established causation. However, it bears mention that even if Plaintiff could demonstrate that Defendants' conduct amounted to deliberate indifference, Plaintiff has failed to point to any evidence from which a reasonable factfinder could conclude that such indifference proximately caused his claimed injuries. *Hill*, 40 F.3d at 1188 (a plaintiff who complains that a delay in medical treatment rose to the level of a constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."); *see also Rogers*, 792 F.2d at 1058 ("Whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses."). Specifically, while Plaintiff contends that a medical professional "would opine" that Defendants' delayed treatment

contributed to the amputation of his left big toe, ECF No. [73] at 12, Plaintiff has failed to introduce any medical evidence in support of his claim. Likewise, Plaintiff has failed to point to any medical records or expert opinions from which a reasonable factfinder could conclude that Defendants' delayed or lack of treatment regarding his fractured toes resulted in them healing in a disfigured form. ECF No. [73] at 14. Thus, summary judgment is warranted.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion Summary Judgment, **ECF No. [66]**, is **GRANTED**.
2. Pursuant to Federal Rule of Civil Procedure 58, Final Judgment will be entered by separate order.
3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT**, any scheduled hearings are **CANCELED**, and all deadlines are **TERMINATED**.
4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 21, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Jessie Jackson
L94249
Suwannee Correctional Institution-Annex
Inmate Mail/Parcels

5964 US Highway 90
Live Oak, FL 32060